*406 OPINION of the Court, by
Ch. J. Bibb.
(Vide ante 90) — Ketcham and Watts exhibited a bill in chancery, praying an injunction against farther proceedings on a replevin bond, returned by the deputy sheriff, Wells, wherein they appeared bound as securities for John Collett, at the suit of Campbell. The grounds stated in the bill, upon which they expected relief, are, that the said Wells produced a blank piece of paper, on which he requested them to write their names ; “ which they did,5’ at a time when they were in a state of great intoxication, incapable of cool reflection-that they have not the smallest recollection that they were informed by the defendant Wells, or any- other person, that the paper on which they were about to set their names was to operate as a replevin bond” — “ And they-are fully impressed with the belief, and hope to prove that a shameful and ungenerous advantage was taken of their situation; and that a disgraceful fraud and imposition was practised on them.” Over and above the injunction, they pray that the replevin bond, as far as respects them, may be vacated by a decree of the court.
The defendant Wells denies that they were drunk,' or that he had been guilty of any fraud, directly or in-he answers that Collett claimed the benefit of directly replevying, and offered the complainants as his securi *407 ties, to which they assented; that it was agreed they should sign a blank, to be filled up as a replevy bond, agreeable to the execution, which Was accordingly done; that Ketcham was “lively with liquor, but not drunk — ■ Watts sober.”
Campbell insisted, by way of pleá, that a court of chancery had no jurisdiction of the case, but that the cause of suit, if any, was properly triable on the common law side of the court.
The circuit court, having finally heard the cause upoti the bill, answers, depositions and exhibits, decreed a perpetual injunction, with costs, against both defendants ; from which they appealed.
The appellees have utterly failed to make out any fraud, imposition, or undue practice upon them, although, in their complaint they had alleged it, without binding themselves by any specification, except that they were drunk when they signed the carte blanche. The law seems well settled, that drunkennes per se is no substantive cause for men to plead in avoidance of their own acts; for this were to encourage drunkenness. But if any unfair advantage was taken of such a situation, as if the party seeking to avoid his act was drawn ih to drink, by the person with whomjie contracted, or by his contrivance, and an unreasonable or unconsei-entious bargain, deed or instrument was procured from, the person in that situation, equity would relieve — 1 Vez. 19, Cory vs. Cory — 3 Pr. Wms. 131, in a note to the case of Osmond vs. Fitzroy, &c. If drunkenness, therefore, had been proved, it could not have availed: but even that has not been made out. It is true, that Messrs. Ballard and Steele saw the complainants drunk, about sun-set of the day the bond bears date, and that Hansborough and Glen saw Ketcham drunk, the former says in the evening, the latter about four o’clock in the afternoon of that day ; but neither of the four witnesses say any thing of the situation of the appellees at the time of the transaction in the bill alluded to ; they have reference to time only, without allusion to the particular period of the day when the signatures were given. The deposition of Isaac Collett, who saw Wells, John Collett and the appellees together immediately before and after the transaction, corroborates the answer of Wells. Upon the whole, it appears that the complain *408 ants were each compos mentis, and a court of chancery1 cannot graduate the capacities or understandings of men ; there is no such thing as an equitable incapacity to contract where there is a legal capacity, as is stated by the court in Osmond vs. Fitzroy, before cited. Nor can it be said, that to take a replevin bond from men who are only bound as securities is unreasonable or un-conscientious, since the law not only permits, but enjoins it as a duty on the officer where the debtor offers it.
So far, then, it appears that the appellees have made out no case for the interference of a court of chancery. Whether the bond, when filled up according to the execution, was or was not their deed, seems to be a question purely legal. The complainants wanted no dico-very from Wells as to the carte blanche, they asked for none, they have proved it by the deposition of Thurs-ton. They had a plain and adequate remedy at law for the trial of this question. They have in no manner implicated Campbell, the creditor; and whatever may be the final result of the question, the original judgment, and the plaintiff’s right to have execution thereof, must remain unimpeached. The complaint is resolved into this, that the officer of the law has misused or abused the process of a court of justice, or has irregularly demeaned himself in his office. That the court, whose process has been abused, or irregularly executed by an officer, has full power to watch over and correct such irregularities, or any abuse committed by the officer in attempting to carry their judgment into effect, cannot be doubted. If, upon motion, or writ of error coram vobis, that court should have adjudicated in favor of the complaint exhibited in this behalf by the ap-pellees, summary and complete justice would have been, done, as well to them, by quashing the replevin, as to the innocent, unimplicated creditor, by putting him in a situation to pursue, with expedition, his remedy on the original judgment, against the principal debtor, who has no cause of injunction. Without intending to give any opinion upon the plea of non est factum, which the appellees have brought into chancery for trial, we feel ourselves bound to declare that the plea of the appellant Campbell should have been allowed.
Decree reversed.